S. &. J. REALTY CO., INC. *vs.* JOSEPH WILLNER.

MARCH 21, 1958.

PRESENT: Condon, C. J., Roberts, Andrews and Paolino, JJ.

PAOLINO, J. This is an action of assumpsit to recover rent alleged to be due under a written lease. After a trial in the superior court a jury returned a verdict in favor of the plaintiff for the amount claimed. Thereafter the trial justice denied the defendant's motion for a new trial. The case is before us on the defendant's exceptions to such decision and to the ruling on an evidentiary question.

The pertinent allegations of the declaration are substantially to the effect that defendant occupied, as a tenant of plaintiff, certain premises in the city of Providence at an agreed rental of $700 a month from March 1, 1954 to June 1, 1955, and that when defendant vacated the premises he was indebted to plaintiff in the amount of $3,350 for rent accrued and not paid. The defendant filed a plea of the general issue.

It appears from the evidence that in December 1950 plaintiff leased to defendant for the term beginning March

1, 1951 and ending February 28, 1954 certain store premises; that such lease provided for a rental of $550 a month during the term thereof and that paragraph 20 of the lease provided that if the lessee held over beyond February 28, 1954 the rent thereafter would be $700 per month.

It is undisputed that defendant continued to occupy the premises from March 1, 1954 to May 14 or 15, 1955; that he sent checks in the amount of $550 each in payment of the rent from March 1, 1954 to and including March 1955; that these checks were cashed by plaintiff; and that defendant's check for $550 for the April 1955 rent was enclosed in plaintiff's letter to defendant dated April 13, 1955.

The president of the plaintiff corporation testified that on August 6, 1954 he wrote to defendant notifying him that the lease had expired on February 28, 1954 and that he was now a month-to-month tenant; that at this time he did not know that defendant had not been paying rent of $700 a month, and for this reason he did not mention the matter in his said letter; that after receiving defendant's letter notifying plaintiff that he was going to vacate the premises on April 30, 1955, plaintiff's president discovered the rental deficiencies and notified defendant by letter dated April 1, 1955 of the amount due from March 1, 1954 to date; that credit for the $550 monthly payments which had been admittedly received by plaintiff had been entered on its books by the bookkeeper who actually received and deposited such checks; and that said president had not personally seen any of the checks except the one sent in payment of the April 1955 rent, which came to his attention because it was forwarded with a registered letter advising that defendant was going to vacate the premises on April 30, 1955.

The plaintiff's president also testified that on or about April 21, 1955 he discussed the matter of the back rent due in a telephone conversation with defendant and that defendant stated he did not have the money and could not pay it; that on April 30, 1955 defendant sent a letter to

plaintiff stating that he had vacated the premises, and he enclosed several keys to the premises; that defendant was still occupying the premises on May 9, 1955; that on May 15 plaintiff received from defendant additional keys; that defendant owed plaintiff the rent for April and May 1955 in addition to the balance of the rent of $150 a month for the months from March 1954 to March 1955, both inclusive; and that the total amount due was $3,350.

Samuel Osterman, to whom plaintiff leased the premises in question after receiving defendant's notice of intention to vacate, testified in substance that he took possession on June 1, 1955, having received the keys from plaintiff on May 28 or May 29, 1955; that he was to have taken over the premises on May 1, 1955 with rent payments to commence May 15, 1955; that defendant did not vacate the premises until May 14 or 15, 1955; and that defendant had given him a check for $275 to cover one-half month's occupancy under a proposed subtenancy from the witness from May 1 to May 15, but that because he did not receive the keys from plaintiff until the latter part of May 1955, he returned the check to defendant.

The defendant testified that he continued to occupy the premises after the expiration of the lease; that he paid $550 a month from March 1, 1954 up to and including March 1955; that on March 30, 1955 he notified plaintiff that he was vacating the premises on April 30, 1955; that no demand for additional rent was made until April 1955, after he had notified plaintiff of his intention to vacate; that he made arrangements with the new tenant, Samuel Osterman, to occupy the premises for one-half month for $275 from May 1 to May 15, 1955; that he vacated the same on May 15, 1955; and that the check for $275 was returned to him by Osterman.

Under cross-examination defendant testified that he had forgotten about paragraph 20 in the lease; that the checks were being sent every month as payments in full; that if

they had not been accepted he would have made arrangements to get out; that he did not look over the lease after he received plaintiff's letter of August 6, 1954; that he assumed the rent was $550 a month up to April 1, 1955 when he received the letter from plaintiff claiming that he owed plaintiff $2,100; and that this was the first time he was told the rent was $700 a month. The defendant admitted in cross-examination that he had his copy of the lease in his possession since 1950 and that he had looked it over carefully before he signed it.

The defendant presented in evidence several checks, each in the amount of $550 and dated on various dates. Some of these checks contained legends on one side or on both sides indicating they were in payment of rent for a particular month. It also appears that some of these checks contained notations that they represented payment in full for the respective months.

The defendant's bill of exceptions consists of seven exceptions. However he has briefed and argued only exceptions numbered 2 and 7. The remaining exceptions, having been neither briefed nor argued, are deemed to be waived. *State* v. *McGregor*, 82 R. I. 437, 445.

We shall first consider exception numbered 7 which is based on the denial of the motion for a new trial. This motion contained the usual grounds that the verdict was against the law, the evidence and the weight thereof and that the damages assessed were excessive. The defendant contends in substance that the trial justice misconceived his duties and erred in denying such motion. He bases this contention in part on the following statement made by the trial justice in denying such motion: "Another peculiarity was that both these parties, in my estimation, if they didn't lie, at least weren't quite as truthful as they might have been * * *."

In reviewing the evidence pertaining to the checks which had admittedly been received by plaintiff, the trial justice

stated in effect that the question of whether plaintiff knew those checks were coming in and the credibility to be given such testimony were matters for the jury. He then stated: "I personally might feel slightly different about it, but on the other hand I have no certainty in my mind as to how much or how many of those checks to allow or to disallow * * *."

The defendant contends in substance that the quoted portions of the trial justice's decision show that he did not approve the verdict and that therefore he should have granted a new trial in accordance with the principle enunciated by this court in *Lornitzo* v. *Rhode Island Hospital,* 79 R. I. 455, 459. We do not agree with defendant's contention that the language of the trial justice in the instant case was such as to show that in his independent judgment the verdict of the jury on the main issues was not supported by a fair preponderance of the credible evidence and therefore failed to respond truly to the real merits of the controversy. In addition to the statements quoted by defendant the trial justice, in reviewing the evidence, stated clearly that although he might have felt "slightly different about it," he did not wish to substitute his feelings for the verdict of the jurors "who had ample opportunity to listen to all the testimony and to weigh it * * *."

After carefully reading his decision we cannot say that he indicated that the jury's verdict was not supported by the evidence or that it was based upon speculation or conjecture. For this reason the *Lornitzo* case, *supra,* is not in point. The instant case is governed by the well-established rule that the decision of the trial justice on a motion for a new trial will not be disturbed unless it is clearly wrong, and that where the evidence is conflicting and the main issue is the credibility and weight of testimony, his decision is of persuasive force and will not be disturbed. *Zinck* v. *Saltzman,* 51 R. I. 236; *Black* v. *Child's Co. of Providence,* 73 R. I. 516; *Gallo* v. *American Egg Co.,* 76 R. I. 450. The

trial justice approved the verdict both on the question of liability and on the issue of damages. After carefully examining the record we cannot say that he was clearly wrong in denying defendant's motion for a new trial. Exception 7 is therefore overruled.

As has been previously pointed out, paragraph 20 of the lease provided that the rent would be $700 a month if the lessee continued to occupy the premises after the expiration of the lease. While cross-examining plaintiff's president about the provisions of paragraph 20, defendant's counsel asked the following question: "Q. In other words, this was in the form of a penalty, wasn't it?" After the witness had answered "No, sir," an objection was made by plaintiff's counsel which was sustained by the trial justice.

The only issue raised by the defendant's exception 2 is the correctness of such ruling. It is clear that the question was objectionable on the ground that it called for a legal conclusion. There was no motion to strike the answer which, although unfavorable, was obviously responsive to the defendant's question. Therefore, having failed to move that the answer be stricken, the defendant is not in a position to complain at this time. Notwithstanding his failure to do so, it is clear from a reading of the pertinent provisions of paragraph 20 that no penalty was provided for therein and hence the defendant was not prejudiced in the circumstances. This exception is overruled.

All of the defendant's exceptions are overruled, and the case is remitted to the superior court for entry of judgment on the verdict.

*Higgins & McCabe, James A. Higgins,* for plaintiff.

*Frank W. Golemba,* for defendant.